# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| CECIL WILLIAMS, ) | No. 06-05041-01-CR-SW-FJG |
| ) | |
| Defendant. ) | |

## SUPPLEMENTAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Defendant filed a Motion to Suppress Evidence, in which he asserts that evidence and statements seized as a result of a vehicular stop and a search of his residence should be suppressed. The United States filed its response. The matter was set for an evidentiary hearing, which was held before the undersigned on December 6, 2006. Defendant was present with counsel, Daniel E. Diemer, and the United States was represented by James J. Kelleher, Special Assistant United States Attorney. After a Report and Recommendation was entered in that case, and objections filed by the defendant, the District Judge entered an Order denying the motion to suppression. [Order, dated January 31, 2007]. In that Order, the District Judge also denied a request for a rehearing, finding that the issues presented were resolvable by the record.

Thereafter, defendant made a request for a Franks hearing. Subsequently, a hearing was held before the undersigned on July 12, 2007, with the same attorneys present.

Defendant contends that the search warrant in this case contained deliberate factual misrepresentations made by Trooper Greenan, which entitle him to a Franks hearing. It is his

1

contention that the evidence seized during the execution of the search warrant on May 7, 2006, should be suppressed based upon his allegation that the affidavit in support of the warrant contained false information. He contends that Trooper Greenan was not truthful about when he received the information about a threat to a concerned citizen. It is his position that Corporal Crouch did not tell Trooper Greenan about the alleged threat until after the traffic stop of defendant's vehicle on May 6, 2006. It is also his contention that the threat was not made directly to the concerned citizen, but to a third party. Additionally, he attacks Trooper Greenan's credibility by asserting that the officer directly threatened Missy Houck, which he has lied about, and that he further lied about when and where he got the information regarding an alleged threat made by defendant. He asserts that the officer's conduct towards Missy Houck, a confidential informant, is important in determining the effect on the search warrant and the fairness of a trial. Defendant requests a <u>de</u> <u>novo</u> review of his objections previously made to the Report and Recommendation, and a <u>Franks</u> hearing on the honesty and veracity of Trooper Greenan.

At the outset, this Court notes that the matter of a rehearing on defendant's motion to suppress was specifically denied by the Honorable Fernando J. Gaitan, Jr., in the Order denying the motion to suppress. Further, the matter before this Court was set for a <u>Franks</u> hearing. Accordingly, except as required by the instant request, this Court will not review the record regarding the issues previously presented and ruled upon in the motion to suppress.

It is the government's contention that the contested aspects of the search warrant are factually correct, and even if they are inaccurate, the specific facts complained of are ultimately inconsequential to a probable cause determination. The government asserts that Corporal Crouch received the information about the threat before the traffic stop, and conveyed it to members of the

Highway Patrol, including Trooper Greenan.  It is further stated that even though the threat came from a third party, it was credible and taken seriously, and that the most defendant can establish is that Trooper Greenan omitted the fact that a third party actually told the citizen of the threat made by defendant.  The government contends, moreover, that an omission does not rise to the level of a deliberate falsehood or reckless disregard for the truth.  The government contends that when the information was conveyed to Trooper Greenan is of no consequence because that information was not included in the search warrant. Further, regarding the omission of the participation of a third party in conveying the threat, it is also argued that this is without significance as there is no allegation that the threat was not made or that the oversight was reckless or deliberate.  Finally, the government contends that even if Trooper Greenan deliberately mislead the court regarding the threat, the remainder of the affidavit is sufficient to establish probable cause for the issuance of the search warrant.

The government first called Trooper Michael Greenan with the Missouri State Highway Patrol.  Regarding his preparation of the search warrant for defendant's residence, he received information from other law enforcement officers about some of defendant's activities.  He spoke with Corporal Shannon Crouch several weeks earlier about defendant.  Corporal Crouch had received information that a concerned citizen was threatened by defendant regarding this investigation and told to "back off." [Tr. 4].  Since the time of the search warrant, Trooper Greenan discovered that this threat was not conveyed directly by defendant to the concerned citizen, but rather, a third party told the concerned citizen about what defendant said.  At the time he applied for the search warrant, Trooper Greenan did not know that the threat did not come directly from defendant.  The threat itself was accurate to the best of his knowledge, and everything else in the

3

search warrant was otherwise accurate.

On cross examination, Trooper Greenan admitted that he never verified the ownership of the property where defendant resided, even though he has stated that it is normally his practice to do so. Specifically regarding the statement made by Corporal Crouch, this information was communicated to him some weeks prior to the actual application for the search warrant. He had not had a conversation with Corporal Crouch or the United States Attorney about the misunderstanding regarding the origin of the threat until the day of the hearing. The discrepancy in the affidavit was that he thought it was a first-person statement at the time he wrote it, and it was actually made by a third person. When he received the information from Corporal Crouch, he believed it was communicated at an informational meeting held every month. When he got the information, Corporal Crouch did not specifically say who made the statement, and the officer still doesn't know who made it. He agreed that he did not verify the information or its source. Trooper Greenan testified that he did not have any contact with Corporal Crouch on the day the application for the search warrant was made.

The officer admitted that he had had a conversation with Missy Houck, but did not recall specific dates. It was stipulated that Missy Houck was a confidential informant on other matters. Trooper Greenan stated that he saw her at Wal-Mart in the parking lot, when he was in his personal vehicle. He pulled up next to her and asked her to talk with him. He admitted that he pulled his vehicle in front of hers so that he could talk to her. He asked her about a conversation she had had with defendant's attorney regarding whether defendant had stayed overnight at her house. Trooper Greenan denied that he told Ms. Houck that he had surveillance on her house or on defendant's. It was a short conversation, and he told her if Jamie, defendant's son, testified for his father, he

4

might be charged. The officer denied that he said other people might be charged if they tried to assist defendant, or that it might affect her position as a confidential informant trying to work off charges for her boyfriend. He asked her if she'd spoken with Jamie about what he was going to say. He also asked her if she was going to tell the truth because that was all he wanted. He denied that he ever threatened her or any of the witnesses for the defense through his conversation with her.

On redirect examination, Trooper Greenan stated that when he made contact with Ms. Houck in the Wal-Mart parking lot, he wasn't on duty at the time. He was with his wife, who was in the vehicle. Regarding placing the properties under surveillance, there was not adequate manpower to do so. Her house is on a dirt road in the middle of nowhere, and it would not have been possible to conduct surveillance.

On recross examination, the officer adamantly denied that he had lied to Missy Houck about her house being under surveillance. The officer was also asked about a report regarding arresting Jamie Williams. He stated that he arrested him in September, although there was a MULES check notation for May.

The government next called Corporal Shannon Crouch, of the Missouri State Highway Patrol. He repeated information about a threat made by defendant. During the time in question, he was approached by a subject at a convenience store, who asked him to step outside. The subject then told him that she was concerned about her family welfare because she had received a threat from an individual, which indicated that if she did not "back off" then her house might be burned down. [Tr. 39]. The threat was taken seriously. As it was relayed to him, "[t]he message was to be delivered from Cecil Williams. . . . " [Id.]. The officer stated that the person told him that the message was sent from defendant, but not directly. The threat was conveyed to the subject with

5

whom he spoke by a third party. Corporal Crouch testified that, shortly after receiving this information, he related it to other officers at a periodic meeting where criminal activity in the area was discussed. He told them that he was approached by an individual who said property or bodily damage would occur if the person didn't back off. At the meeting, he did not get into any details about how the threat was made, but it was conveyed that the person believed the threat was coming through the direction of defendant. Trooper Greenan was one of the individuals present at the meeting. Apart from this briefing, he did not recall ever discussing this threat with Trooper Greenan again. The night of the search warrant, the information about a potential threat having been made was brought up in the final stages of the preparation of the search warrant. Again, he cannot recall in specific words what he discussed, but he remembers discussing the overall issue of the threat.

On cross examination, Corporal Crouch testified that they only one-on-one conversation with Trooper Greenan he might have had might have been the night of the search warrant. He would not try to mislead Trooper Greenan to say that the statement was directly made by defendant. He didn't provide any other information for the search warrant.

Defendant called Missy Houck to the witness stand. Regarding her conversation with Trooper Greenan at the Wal-Mart parking lot, she was coming out of McDonald's parking lot and he pulled in front of her car. He got out of his car, and was not in uniform. He told her it would be in her best interest to talk to him. He asked her why she was going to court and she said she was going to testify for defendant. Trooper Greenan told her that it was being said that defendant had spent the night at her house, and he asked her if defendant ever had. She said he had not. He told her that "they've been watching him for quite some time." [Tr. 54]. She thought this was a threat. He also asked her if she knew that if Jamie testified for his father, he could be charged. Ms. Houck

6

testified, additionally, that Trooper Greenan indicated that if anyone tried to help defendant, the federal agents would make sure those individuals were charged if they had any information on them. She thought this was a threat to her and her boyfriend. Shortly after this conversation, her boyfriend, who was in state prison, was brought to Greene County. There he was told that if he would testify against defendant, "he could walk out of there today." [Tr. 56]. If he didn't, they "would make sure that he got 15 to life." [Id.].

On cross examination, Ms. Houck testified that Trooper Greenan just told her they'd been watching defendant and knew he wasn't spending the night at her house. He didn't actually mention surveillance at her house. Her boyfriend is Joseph Pulliam, who was arrested for possession of firearms. She cooperated with this investigation and thought he wouldn't be charged. She admitted that the no one had ever promised her anything regarding her boyfriend. She also admitted that she had talked to the Assistant United States Attorney and Trooper Greenan in her home, and that no one threatened her on that occasion. She has never changed her story that defendant came to dinner periodically, but never spent the night. Regarding the conversation with Trooper Greenan in the parking lot, she took his tone as threatening. She thought it might be a threat to her boyfriend, although he was not mentioned. She also admitted that her boyfriend didn't have any direct relationship with anything in defendant's case. Ms. Houck testified that it was her interpretation that if anyone else testified for defendant, they would be charged, and that's what she considered to be a threat. She also thought the officer might be trying to scare her into not coming to this hearing.      Pursuant to Franks v. Delaware, 438 U.S. 154 (1978), in a challenge to a search warrant application, defendants must establish "that a false statement was included in the affidavit knowingly and intentionally or with reckless disregard for its truth, and that the affidavit's remaining

7

content is insufficient to establish probable cause." United States v. Roberson, 439 F.3d 934, 939 (8th Cir. 2006). Even if the contested statements are false and misleading, the search warrant may still stand if the statements in question are removed and the remaining statements in the application would support a finding of probable cause to support the search warrant. Id. at 939.

A full review of the evidence in this case convinces the Court that defendant has failed to establish that Trooper Greenan deliberately misstated the facts about the threat or made his statement in the affidavit with a reckless disregard for the truth. Rather, based on the testimony adduced at the hearing, it is clear that there was a misunderstanding about the origin of the statement conveyed to the concerned citizen. While Trooper Greenan believed at the time he prepared the affidavit that the threat came directly from defendant, it was actually communicated by a third-party to the concerned citizen. That the affidavit was written in a manner that suggested that defendant made the threat directly does not change the fact that a threat was made, which was taken seriously by the individual who was threatened. Whether it was received first-hand or not, the information in the affidavit was that defendant had threatened to harm an individual if that person cooperated with the investigation. Nothing in the evidence or testimony suggests that defendant did not make the threat. Regarding the timing of the communication to Trooper Greenan, the credible evidence establishes that Corporal Crouch provided this information during a general meeting with other law enforcement officers a few weeks before the traffic stop. It was after that stop that Trooper Greenan prepared the affidavit, in which he included this information. The Court is completely unpersuaded by defendant's suggestion that the information was deliberately misconstrued in order to obtain a no-knock warrant, when all the testimony clearly established that a no-knock warrant was not sought. At worst, Trooper Greenan, misunderstood the way the threat was conveyed to the concerned

8

citizen. There is absolutely no basis to conclude that he deliberately misrepresented the information or demonstrated a reckless disregard for the truth.

Defendant has otherwise attacked Trooper Greenan's credibility by claiming that he threatened Missy Houck; that he lied about verifying defendant's residence; and that he illegally went on the property to arrest Jamie Williams. The Court has reviewed the testimony adduced at the hearing on these matters. While approaching a witness in a case, even off-duty, is certainly conduct that cannot be condoned by the Court, there was nothing in Ms. Houck's testimony to suggest that she was threatened or lied to by Trooper Greenan. Whatever relevancy this line of inquiry has to a Franks hearing is debatable, but to the extent that defendant attempts to impugn Trooper Greenan's credibility, the Court is satisfied that, based on the record as a whole, there is nothing to suggest that Trooper Greenan in any manner fabricated the information in the affidavit. Accordingly, it will be recommended that the motion to suppress should be denied.

Based on the record, the testimony adduced at the hearing, and applicable case law, the Court finds that it should be supplementally recommended that defendant's Motion to Suppress be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 22 of the United States District Court for the Western District of Missouri,

SUPPLEMENTALLY RECOMMENDED that defendant's Motion to Suppress be denied.

/s/ James C. England
JAMES C. ENGLAND, Chief
United States Magistrate Judge

Date: 8/1/07